UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH A. ROSS,<br><br>    Plaintiff<br><br>    V.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, GENZYME CORPORATION, GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF GENZYME CORPORATION,<br><br>    Defendants | CIVIL ACTION NO. |

## **COMPLAINT**

### INTRODUCTION

1. Plaintiff, Elizabeth A. Ross ("Ms. Ross"), brings this action against the Defendants, Hartford Life and Accident Insurance Company ("Hartford"), Genzyme Corporation ("Genzyme"), and the Group Long Term Disability Plan for Employees of Genzyme Corporation ("Plan"), for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA") and the Americans with Disabilities Act of 1990 ("ADA"), codified at 42 U.S.C. § 12101 *et seq.* Ms. Ross, as a Genzyme employee, was a participant in an ERISA welfare benefit plan insured and administered by Hartford.

2. Ms. Ross is filing this action to: 1) be provided injunctive relief by a declaration that the Plan's limitation on disability benefits due to mental illness is discriminatory

under the ADA and unenforceable; 2) recover long-term disability ("LTD") benefits due to her under the Plan; 3) clarify her rights under the terms of the Plan; 4) enforce the present rights existing therein; 5) recover an amount of money which will fairly compensate her for emotional pain and suffering; 6) recover punitive damages; and 7) recover interest, costs and attorneys' fees as provided by ERISA and the ADA.

3. Ms. Ross challenges the Defendants': 1) discrimination on the basis of her disability; 2) restricted access to employment benefits; 3) interference with her right to LTD benefits; and 3) unlawful termination of her disability benefits.

## JURISDICTION

4. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Defendants' breach of their ERISA obligations and Defendants' violations of the ADA took place in this district.

## PARTIES

5. Ms. Ross is a resident of Massachusetts. At the time she became disabled, Ms. Ross was working for Genzyme Corporation. As a benefit of her employment, Genzyme provided Ms. Ross with long term disability insurance. Ms. Ross is a vested participant in a Genzyme employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Ross has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Hartford, is a for-profit corporation with its principal place of business at 200 Hopmeadow Street, Simsbury, Connecticut, 06089. Hartford transacts business in Massachusetts and insures and underwrites the Plan under which Ms. Ross is suing. Hartford is the party responsible for processing claims made under the

Plan and making a final determination as to Plan participants' eligibility for disability benefits. At the time Ross's disability benefits were terminated, Hartford funded and administered claims under the Plan.

7. The defendant, Genzyme, is a for-profit corporation with its principal place of business at 500 Kendall Street, Cambridge, Massachusetts 02142. Genzyme transacts business in Massachusetts and sponsors and administers the Plan under which Ms. Ross is suing.

8. At all times relevant to the claims asserted in this Complaint, Hartford and Genzyme purported to act as an ERISA claims fiduciaries with respect to participants of the Plan, generally, and specifically, with respect to Ms. Ross, within the meaning of ERISA.

9. The Plan under which Ms. Ross is suing is an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. §1002(1). The Plan was issued by Hartford to Genzyme.

10. The Group Policy Number is GLT675486.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Ross timely filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"), a copy of which is attached as Exhibit A.

12. On June 25, 2014, Ms. Ross received a Right to Sue notice from the MCAD, a copy of which is attached as Exhibit B.

13. On December 20, 2012, Ms. Ross timely appealed Hartford's June 29, 2012 decision to terminate her LTD benefits on July 5, 2012. On September 9, 2013 Hartford

upheld its termination of Ms. Ross's benefits, representing its final decision on her claim.

14. Ms. Ross has exhausted her administrative remedies pursuant to 42 U.S.C. § 2000e-5 and 29 C.F.R. 2560.503-1(1).

## STATEMENT OF FACTS

**Insurance Entitlement, Plan Definitions, Discretion**

15. Genzyme purchased a group term insurance policy, including the Plan, from the Hartford, which became effective on January 1, 2006.

16. As an employee of Genzyme, Ms. Ross became eligible for long-term disability benefits under the Plan on or about April 2007, her date of hire, under a contract of insurance with Hartford.

17. Ms. Ross paid the Plan premiums.

18. Disability is defined in the Plan as follows:

    Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
    1) Your Occupation during the Elimination Period;
    2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
    3) after that, Any Occupation.

    If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-Disability Earnings, whichever occurs first.

    Your Disability must result from:
    1) accidental bodily injury;
    2) sickness;
    3) Mental Illness;

4) Substance Abuse; or
5) pregnancy.

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

19. Under the Plan, benefits paid for disability due to Mental Illness or Substance Abuse are limited as follows:

"If You are Disabled because of:
1) Mental Illness that results from any cause;
2) any condition that may result from Mental Illness;
3) alcoholism which is under treatment; or
4) the non-medical use of narcotics, sedatives, stimulants, hallucinogens, or any other such substance; then, subject to all other provisions of The Policy, We will limit the Maximum Duration of Benefits.

Benefits will be payable:
1) for as long as you are confined in a hospital or other place licensed to provide medical care for the disabling condition; or
2) if not confined, or after you are discharged and still Disabled, for a total of 24 month(s) for all such disabilities during your lifetime."

20. Under the Plan, the definition of Maximum Duration of Benefits is as follows:

**Maximum Duration of Benefits**

**Maximum Duration of Benefits Table**

| Age When Disabled | Benefits Payable |
|---|---|
| Prior to Age 60 | The day before Normal Retirement Age |

…

Normal Retirement Age means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by Your date of birth as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| … | |
| 1943 thru 1954 | 66 |
| …" | |

21. The Plan does not provide Hartford or the Plan with independent and final discretion to interpret the terms of the Plan and to evaluate Plan participants' eligibility for benefits.

**Ms. Ross's Claim for Disability Benefits and Hartford's Termination of Ms. Ross's Claim**

22. Ms. Ross was employed as a Principal and Manager of Genzyme's International Operations and Planning department.

23. Ms. Ross went on medical leave beginning in April 2010 due to a psychiatric disability resulting from ongoing and overwhelming stressors at work.

24. In the context of these stressors, Ms. Ross became disabled by major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder.

25. On or about June 7, 2010, Ms. Ross applied to Hartford for LTD benefits.

26. By letter dated July 15, 2010, Hartford notified Ms. Ross that her claim for LTD benefits had been approved.

27. In that same July 15, 2010 correspondence, Hartford stated that because Ms. Ross was disabled due to a mental illness, under the Plan definition of Disability, her benefits would be limited to 24 months, ending on June 30, 2012.

28. LTD benefits are payable until a Plan participant turns age 66 for those disabled due to a physical or medical condition.

29. Under the Plan, if Ms. Ross had become disabled due to a physical condition, she would be eligible for benefits until July 7, 2019.

30. Genzyme terminated Ms. Ross's employment with the company on August 31, 2011, because of her inability to return to work.

31. On September 25, 2011, the Social Security Administration determined that Ms. Ross was totally disabled, beginning April 1, 2010.

32. In a claim file note dated April 6, 2012, Hartford Claims Examiner Lisa Becker acknowledged that based on the medical information contained in Ms. Ross's claim file, she "remains unable to return to work at this time in any occupation or job."

33. Under Genzyme's group life insurance plan, The Hartford continues to pay Ms. Ross's waiver of premium claim due to her disability.

34. By letter dated June 29, 2012, Hartford notified Ms. Ross that because her disabling condition was a mental illness, benefits were not payable beyond July 5, 2012.

35. By letter dated April 2, 2012, Hartford notified Genzyme of its decision to terminate Ms. Ross's benefits.

36. The decision to terminate Ms. Ross's benefits was wrongful and contrary to law.

37. Upon information and belief, there is no rational basis that justifies the disparity in benefits provided under the Plan for those with mental disabilities and those with physical disabilities.

38. Hartford was influenced by its financial conflict of interest, as both the administrator of the Plan and the payer of benefits thereunder, when it terminated Ms. Ross's benefits.

39. By choosing a to buy a LTD policy for its employees that limits benefits for disabilities based on mental illness to two years, Genzyme failed to act in the best interest of Plan participants.

40. Upon information and belief, the termination of Ms. Ross's LTD benefits created a conflict of interest on behalf of Genzyme as both Plan sponsor and fiduciary, because

its future premiums for the LTD Plan are based on allowed claims, both in type and dollar amount.

41. Due to the unlawful Plan limitation of benefits under the ADA, Ms. Ross has lost her rightful disability benefits. She has also suffered emotional distress as a result of the Defendants' actions.

42. Due to the unlawful Plan limitation of benefits under the ADA, Ms. Ross has also lost the use of her disability benefits.

43. Having exhausted the administrative procedures provided by the Defendants and as required by the ADA, Ms. Ross now brings this action.

## FIRST CAUSE OF ACTION
## ADA – TITLE I
## (GENZYME)

44. Ms. Ross realleges each of the paragraphs above as if fully set forth herein.

45. Title I of the ADA provides that an employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regards to . . . employee compensation . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

46. Title I further prohibits an employer from "participating in a contractual or other arrangement or relationship that has the effect of subjecting [the employer's] qualified . . . employee with a disability to . . . discrimination . . . (such relationship includes a relationship with . . . and organization providing fringe benefits to an employee . . .) [.]" 42 U.S.C. § 12112(b)(2)

47. Genzyme has violated Ms. Ross's rights in two distinct ways under 42 U.S.C. § 12112, because it adopted and maintained a LTD policy that (a) conditions the receipt

of benefits for mentally disabled employees on confinement in a hospital or institution, thereby requiring their segregation on account of their mental disability; and (b) discriminates against mentally disabled employees by limiting their benefits to twenty four (24) months while imposing no similar limit on employees disabled for reasons other than those categorized as mental illness.

## SECOND CAUSE OF ACTION
## ADA –TITLE III
## (HARTFORD)

48. Ms. Ross realleges each of the paragraphs above as if fully set forth herein.

49. Title III of the ADA prohibits discrimination in public accommodations and provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

50. Title III further provides that "it shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class . . . to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[,]" 42 U.S.C. § 12182(b)(1)(A)(I), "to afford an individual or class of individuals , on the basis of a disability or disabilities of such individual or class, . . . to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[,]" 42 U.S.C. § 12182(b)(1)(A)(ii), and "to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, . . . with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that

51. provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[,]" 42 U.S.C. § 12182(b)(1)(A)(iii).

51. Hartford has violated Ms. Ross's rights in two distinct ways under 42 U.S.C. § 12182, because it has adopted, maintained and provided a LTD plan that (a) conditions the receipt of benefits for mentally disabled plan participants on confinement in a hospital or institution, thereby requiring their segregation on account of their mental disability; and (b) discriminated against mentally disabled plan participants by limiting their benefits to twenty four (24) months while imposing no similar limit on employees disabled for reasons other than those categorized as mental illness.

**THIRD CAUSE OF ACTION**
**ERISA**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

52. Ms. Ross realleges each of the paragraphs above as if fully set forth herein.

53. The Plan is a contract.

54. Ms. Ross has performed all of her obligations under the contract.

55. 29 U.S.C. § 1132(a) states that:

    A civil action may be brought ---

    1. by a participant or beneficiary –

        A. for the relief provided for in subsection (c) of this section, or

      B.    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

56. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

57. The Defendants unlawfully discriminated against and interfered with Ms. Ross's right to LTD benefits.

58. The Defendants unlawfully terminated Ms. Ross's benefits by adopting, maintaining, and administering an unlawful, arbitrary, and intentionally discriminatory Plan limitation.

59. In accordance with 29 U.S.C. §1132, Ms. Ross is entitled to LTD benefits under the Plan based upon her disabled status from her own and any occupation from July 6, 2012 and continuing until she reaches the age of 66, on July 7, 2019.

60. The Defendants have refused to provide Ms. Ross with her disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

61. As a direct and proximate result of this breach, Ms. Ross has lost the principal and the use of her rightful disability benefits.

**FOURTH CAUSE OF ACTION**
**ERISA**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

62. Ms. Ross realleges each of the paragraphs above as if fully set forth herein.

63. Under the standards applicable to ERISA, Ms. Ross deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

64. The Defendants have the ability to satisfy the award.

65. Ms. Ross's conduct of this action is in the interests of all participants suffering from mental conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

66. The Defendants have acted in bad faith in terminating Ms. Ross's disability benefits under the Plan.

67. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge, and decree that Ms. Ross is entitled to ongoing disability benefits as calculated under the terms of the Plan.

(2) Award Ms. Ross disability benefits and interest from the dates of the Defendants' breaches of contract.

(3) Order that the Defendants make restitution to Ms. Ross in the amount of all losses sustained by Ms. Ross as a result of the wrongful conduct alleged herein, together with prejudgment interest.

(4) Order that Ms. Ross be awarded an amount of money which will fairly compensate her for her emotional pain and suffering and damage to her reputation and earning capacity;

(5) Award Ms. Ross the costs of this action and reasonable attorneys' fees;

(6) Order that the Defendants be ordered to pay Ms. Ross punitive damages;

(7) Order that injunctive relief be provided to require Defendants to cease and desist from any further discriminatory and/or retaliatory actions;

(8) Order that injunctive relief be provided to declare that the mental illness Plan limits are unenforceable; and

(9) Award such other relief as the court deems just and reasonable.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues herein which may be tried by right of jury and an advisory jury on all factual issues material to claims not triable by right by a jury, pursuant to Fed.R.Civ.P. 39(c).

Date:   June 27, 2014                                                  Respectfully submitted for the Plaintiff,

By:   /s/ Mala M. Rafik
Mala M. Rafik
BBO No. 638075
ROSENFELD RAFIK & SULLIVAN, P.C.
184 High Street, Suite 503
Boston, MA 02110
T: 617-723-7470, ext. 205
F: 617-227-2843
E: mmr@rosenfeld.com