UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-12748-GAO

ELIZABETH A. ROSS,
Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, GENZYME CORPORATION, and GROUP LONG TERM DISABILITY PLAN FOR EMPLOYEES OF GENZYME CORPORATION,
Defendants.

OPINION AND ORDER
September 25, 2015

O'TOOLE, D.J.

This action arises from the termination of plaintiff Elizabeth Ross' employment benefits under a long-term disability benefits program. Ross alleges that defendants Hartford Life and Accident Insurance Company ("Hartford") and Group Long Term Disability Plan for Employees of Genzyme Corporation violated Title III of the Americans with Disabilities Act ("ADA") and the Employment Retirement Income Security Act ("ERISA") by wrongfully denying her benefits.[1] The defendants have moved to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    Factual Allegations**

The Complaint alleges the following facts. Beginning in 2007, Ross was employed at Genzyme Corporation. There, she participated in an employee benefit plan issued by Hartford. The plan included a long-term disability ("LTD") benefits program. Under that program, a

---

[1] Ross' Complaint also contains allegations that Genzyme Corporation violated Title I of the ADA. That claim has been dismissed and Genzyme is no longer a defendant in this action.

participant who suffered from a physical disability could potentially receive monthly payments until age sixty-six. However, a participant suffering a mental disability could receive monthly benefits for any period of hospitalization but only for a maximum period of twenty-four months thereafter.

Beginning in April 2010, Ross took medical leave due to anxiety issues. She was diagnosed with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. Ross applied for LTD benefits in June 2010. The following month, Hartford informed her that her claim had been approved and that her benefits would be limited to twenty-four months, excluding periods of hospitalization, because she was suffering from a mental disability. Two years later, in June 2012, Hartford notified Ross that it would terminate her payments in July. Had Ross been physically disabled, she would have been eligible to receive benefits until July 7, 2019, when she will turn sixty-six.

On December 20, 2012, Ross appealed Hartford's decision to terminate her benefits. Hartford upheld its decision. Ross also filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission. She later withdrew her case from MCAD and filed suit in this Court.

## II.     Discussion

### A.     ADA

Ross alleges that Hartford violated Title III of the ADA by providing a shorter benefit period for the mentally disabled than for the physically disabled under its LTD plan. Under Title III,

> [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The First Circuit has indicated that the "public accommodations" clause of Title III is not necessarily limited to physical structures and may include certain employee insurance plans. See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New Eng., Inc., 37 F.3d 12, 20 (1st Cir. 1994). Accordingly, the defendants do not here dispute that Title III applies to their LTD plan. However, in Carparts, the First Circuit also set aside the question of "whether [Title III] is intended merely to provide access to whatever product or service the subject entity may offer, or is intended in addition to shape and control which products and services may be offered." Id. at 19.[2] Consequently, whether the ADA prevents an insurer from offering different benefits for mental and physical disabilities remains an open question in this Circuit, and district courts have divided on the issue. Compare Wilson v. Globe Specialty Prods., Inc., 117 F. Supp.2d 92, 95-97 (D. Mass. 2000), and Pelletier v. Fleet Fin. Grp., Inc., Nos. 99-CV-245-B, 99-CV-146-PH, 2000 WL 1513711, at *2-3 (D.N.H. Sept. 19, 2000), with Fletcher v. Tufts Univ., 367 F. Supp. 2d 99, 111 (D. Mass. 2005), and Iwata v. Intel Corp., 349 F. Supp. 2d 135, 149 (D. Mass. 2004).

Many of the Circuit Courts of Appeals have found that the ADA does *not* mandate that insurers provide the same levels of benefits to the mentally and physically disabled. See EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 151-53 (2d Cir. 2000); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1163-18 (9th Cir. 2000); Kimber v. Thiokol Corp., 196 F.3d 1092, 1101-02 (10th Cir. 1999); Lewis v. Kmart Corp., 180 F.3d 166, 170 (4th Cir. 1999); Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998); Parker v. Metro. Life Ins. Co., 121 F.3d

---

[2] Later, the First Circuit explicitly left open the question of whether the ADA prohibits discrepancies in benefit plans for those with mental and physical disabilities. Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22, 27 & n.3 (1st Cir. 2009). That Court addressed the issue most recently in Sirva Relocation, LLC v. Richie, 794 F.3d 185, 200 (1st Cir. 2015), acknowledging that "it cannot be said that there is no room for principled disagreement about the viability of differential-benefits claims under the ADA."

1006, 1018 (6th Cir. 1997); EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1044 (7th Cir. 1996); cf. McNeil v. Time Ins. Co., 205 F.3d 179, 185-89 (5th Cir. 2000). And while this Court is not bound by those decisions, I find their reasoning persuasive.

Here, the parties do not dispute that the defendants have offered the same plan to all eligible employees. In other words, participation in the plan is not qualified on the basis of any health-related distinction between physical and mental conditions. (Presumably, employees are not generally under a disability when they first join the plan as participants.) However, the plan provides different LTD benefits depending on a particular participant's disability. But insurance companies often provide sliding scales of benefits for different conditions or treatments. If the ADA had implemented a fundamental change in the business practices of insurers, one would have expected its anti-discrimination clause to contain much clearer language to that effect.[3] Indeed, the ADA itself acknowledges that insurance companies may make rational distinctions between different ailments: a safe-harbor provision explains that "[s]ubchapters I through III of this chapter . . . shall not be construed to prohibit or restrict an insurer . . . from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." 42 U.S.C. § 12201(c)(1).

Ross argues that the safe-harbor provision requires that the defendants submit evidence justifying the different benefit terms for mental and physical disabilities. The Fourth Circuit rejected this same argument in Ford v. Schering-Plough Corp. There, the Court declined to find

---

[3] As the Seventh Circuit observed,

> [w]ithout far stronger language in the ADA . . . , we are loath to read into it a rule that has been the subject of vigorous, sometimes contentious, national debate for the last several years. Few, if any, mental health advocates have thought that the result they would like to see has been there all along in the ADA.

CNA Ins. Cos., 96 F.3d at 1044.

that § 12201 placed an affirmative duty on insurers to justify coverage differentials based on mere allegations of discrimination, reasoning that such an interpretation would "require a seismic shift in the insurance business" and contradict Supreme Court precedent interpreting similar provisions in the Age Discrimination in Employment Act. 145 F.3d at 611-12 (citing Pub. Employees Ret. Sys. of Ohio v. Betts, 492 U.S. 158 (1989)). I agree with this rationale.

Similarly, the Supreme Court's interpretation of the Rehabilitation Act, which contains language that parallels that of the ADA, is informative. See Wilson, 117 F. Supp. 2d at 96 (analogizing to § 504 of the Rehabilitation Act in ADA action). The Rehabilitation Act prohibits federal programs and programs receiving federal funding from discriminating on the basis of disability. 29 U.S.C. § 794. In Traynor v. Turnage, 485 U.S. 535 (1988), disabled petitioners were prohibited from availing themselves of an extension of time to use certain veterans benefits because their disability—alcoholism—was a result of "willful misconduct." Id. at 538. By comparison, those whose disabilities were not a result of "willful misconduct" could use the extension. Upholding this policy, the Supreme Court explained, "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." Id. at 549. By analogy, the plaintiff does not state a claim for relief under the ADA by alleging that the defendants refused to extend a particular benefit for one disabled population to all disabled populations. See Wilson, 117 F. Supp. 2d at 96; Conners v. Me. Med. Ctr., 42 F. Supp. 2d 34, 52 (D. Me. 1999) (discussing Traynor in context of ADA claim).

    B.    ERISA

Ross also alleges that the defendants violated ERISA by refusing to pay her benefits she was properly owed under the plan from July 2012 onward. Under ERISA, a participant in a plan

may bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). However, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983). Ultimately, Ross is only entitled to relief under ERISA insofar as she can show that the ADA bars the unequal treatment of physical and mental disabilities. See Wilson, 117 F. Supp. 2d at 97-98. Because she cannot make this showing under the ADA, her ERISA claims must also fail.

### III.     Conclusion

For the reasons stated herein, the defendants' Motion to Dismiss (dkt. no. 27) is GRANTED. The action is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge